# KEROTEST MFG. CO. v. C–O–TWO FIRE EQUIPMENT CO.

## No. 10302.

United States Court of Appeals
Third Circuit.

Argued Dec. 4, 1950.

Reargued April 20, 1951.

Decided May 24, 1951.

Walter J. Blenko, Pittsburgh, Pa. (John F. C. Glenn, Pittsburgh, Pa., Aaron Finger,

Wilmington, Del., Richards, Layton & Finger, Wilmington, Del., Smith, Buchanan & Ingersoll and Blenko, Hoopes, Leonard & Glenn, Pittsburgh, Pa., on the brief), for plaintiff-appellee.

R. Morton Adams, New York City (Pennie, Edmonds, Morton & Barrows, New York City, Arthur G. Connolly, Wilmington, Del., on the brief), for defendant-appellant.

Before BIGGS, Chief Judge, and MARIS, GOODRICH, McLAUGHLIN, KALODNER, STALEY and HASTIE, Circuit Judges.

BIGGS, Chief Judge.

Kerotest Manufacturing Company, the plaintiff in the instant proceeding, sued C-O-Two Fire Equipment Company for a declaratory judgment to have two patents owned by C-O-Two, Re. 23,142 and 2,454,621, declared invalid. The suit at bar was commenced on March 9, 1950. Kerotest is a manufacturer of valves for use in portable carbon dioxide fire extinguishers. C-O-Two manufactures similar extinguishers.

On January 17, 1950, C-O-Two sued Acme Equipment Company, Inc. in the United States District Court for the Northern District of Illinois, charging Acme with infringing the two patents previously referred to by "making * * * and selling * * * squeeze grip valves and discharge heads for portable carbon dioxide fire extinguishers * * *"[1] This proceeding is generally referred to as the "Chicago suit".

Kerotest did not intervene in the Chicago action and apparently did not offer to defend Acme; instead according to an affidavit executed by Roush, Kerotest's president, it brought the instant suit for a declaratory judgment. Thereafter, on March 22, 1950, C-O-Two moved to have Kerotest made an actual party defendant in the Chicago litigation. Two days later Acme filed a motion in the Chicago action to stay that proceeding because the instant suit had been brought by Kerotest. On March 25, C-O-Two moved for a stay in this proceeding pending the prosecution of the Chicago action. On March 29, Kerotest made a motion in the instant suit to enjoin prosecution of the Chicago litigation either as a whole or as to it.

C-O-Two's motion for a stay and Kerotest's motion for an injunction came on for hearing before Chief Judge Leahy on April 21, 1950. Kerotest argued that it had not been properly joined in the Chicago action but that even if it had been so joined, that joinder had not taken place until after it had filed the instant suit. Kerotest pointed out that the Chicago litigation was filed first; that it involved the same controversy as the suit at bar, viz., the same patents and the same infringing devices, even if the parties were not the same. C-O-Two insisted that unnecessary duplication of litigation would be avoided by staying the instant case. Judge Leahy held that the court below could not enjoin C-O-Two from seeking a final adjudication against Acme in the Chicago suit and, further, that it would be an abuse of discretion to do so. He stated that inasmuch as the Chicago suit was scheduled for an early trial it would be more economical "of judicial time" for Kerotest to contest the issues in Illinois as a codefendant rather than consume the time of the United States District Court in Delaware in "duplicate litigation." Judge Leahy also pointed out that there was no vested right in a litigant to have a case tried by one judge rather than by another.[2] He stayed the proceedings for ninety days providing that both parties might renew their motions thereafter, it being his intention to see how the Chicago litigation proceeded within that period for though answers had not been filed a date for trial of the Chicago suit had already been set.

Kerotest appealed to this court which affirmed the judgment. 182 F.2d 773. By the time the case was argued on appeal,

1. In the complaint in the instant case Kerotest refers to another earlier action brought against The General Detroit Corporation by C-O-Two. This suit was filed in August, 1949, and settled in January, 1950, by a consent decree. We will make no further reference to it since it is irrelevant to the issues presented by the instant appeal.

2. No opinion reported for publication.

Acme's motion for a stay in the Chicago litigation had been denied and Kerotest had moved the United States District Court for the Northern District of Illinois to dismiss the Chicago suit as to it. These facts are alluded to in a footnote to Judge Hastie's opinion. It appeared from the arguments on that appeal that Kerotest had abandoned its effort to have the Chicago suit stayed in its entirety and limited its position to asking that that action be restrained only insofar as it involved Kerotest.

When the ninety day period provided by Judge Leahy's judgment had expired, Acme's motion in the Chicago suit for a stay because of the pendency of the instant case had been denied and Acme had filed an answer. Kerotest had moved to quash the service and to dismiss the case as to it. These motions had been denied and the Illinois Court had entered an order on May 29, 1950, *nunc pro tunc* as of March 24, 1950 making Kerotest a party-defendant as of March 24, 1950, C-O-Two having amended its complaint to that end. Kerotest also had filed an answer. The trial date had been reset for September 28, 1950 by agreement of counsel since the original trial date of July 8 could not be adhered to.

On July 21, 1950 Kerotest moved for a preliminary injunction to restrain C-O-Two from proceeding with the Chicago litigation and on that day also C-O-Two moved for a stay of the instant suit pending disposition of the Chicago litigation. These motions were heard by Judge Rodney in the court below. He concluded, D.C., 92 F.Supp. 943, that the motion of the plaintiff, Kerotest, for a preliminary injunction restraining the defendant, C-O-Two, from proceeding against Kerotest in the Chicago action should be granted and that the motion of C-O-Two for an order staying further proceedings in the instant suit until ten days after the final determination of the Chicago action should be denied.

The court below based its decision on Crosley Corporation v. Hazeltine Corporation, 3 Cir., 122 F.2d 925, 930, Crosley Corp. v. Westinghouse Electric & Mfg.

Co., 3 Cir., 130 F.2d 474, 475, and Triangle Conduit & Cable Co., Inc. v. National Electric Products Corporation, 3 Cir., 125 F.2d 1008, 1009, all decided by this court. Judge Rodney concluded properly that the same subject matter was before the Illinois court and the Delaware court but went on to hold in effect that because on March 9, 1950, when the suit at bar was filed, Kerotest had not been made a party in the Chicago suit, the rule of the Hazeltine, Westinghouse and Electric Products cases required a stay of the proceedings in Illinois while the Delaware litigation was prosecuted. Judge Rodney pointed out also that an amendment of the kind effected by C-O-Two as of March 24, 1950, whereby Kerotest was made a party to the Chicago litigation " * * * does not relate back in time to the filing of the original suit but is akin to the institution of a new action against the new parties." [3]

We cannot agree with the conclusions reached. To the end that our position may be made plain we state again that the parties to the action at bar are Kerotest and C-O-Two; that the parties to the Chicago suit are C-O-Two and Acme and Kerotest, but that Kerotest did not become a party to the Chicago action until as of March 24, 1950, whereas the instant suit was brought on March 9, 1950. We do not think that the rule of the cited decisions requires the order made by the court below. Our reasons follow.

In Crosley v. Hazeltine, after litigation in which Hazeltine had sued Crosley in Ohio alleging infringement of two out of twenty-two possibly pertinent patents, Crosley brought a declaratory judgment suit against Hazeltine in the Delaware District Court to determine the validity of the remaining twenty patents. 38 F.Supp. 38. Shortly thereafter Hazeltine filed nine suits in the District of Ohio alleging that Crosley had infringed fifteen of the twenty patents involved in the declaratory judgment suit. We held that the Delaware District Court should enjoin the Ohio suits. Two parties only were involved and it will be seen that the entire subject matter of the

---

3. See the authorities contained in note 3 cited to the text, 92 F.Supp. at page 947.

litigation was before the Delaware court prior to the filing of the Ohio suit to test the validity of the fifteen patents. The differences between the circumstances of Crosley v. Hazeltine and those at bar seem obvious.

In Crosley v. Westinghouse, Crosley filed a suit for a declaratory judgment against Westinghouse in the District Court for the Western District of Pennsylvania to have sixteen patents, which Westinghouse asserted Crosley had infringed, declared invalid and not infringed. 43 F. Supp. 690. In an obvious race to the court house, one day later Westinghouse filed three suits against Crosley in an Ohio District Court, charging infringement by Crosley of the sixteen patents. We held that the Pennsylvania court should enjoin the prosecution of these infringement suits in Ohio. Again only two parties were involved and it will be seen that the entire subject matter of the litigation was before the Pennsylvania District Court prior to the time the suits were filed in Ohio.

It is primarily on the intervening case of Triangle Conduit & Cable Co. v. National that Kerotest relies. In this case, early in 1941, Triangle sued National in the District of Delaware seeking a declaratory judgment to the effect that eleven patents owned by National were invalid. Eighteen days later National filed suit in the Eastern District of Michigan against Triangle and Sears, Roebuck & Company, by which it sought judgment that Triangle had infringed by manufacturing, selling and using articles in violation of all the patents and that Sears, Roebuck had infringed by reselling articles manufactured in violation of six of the seven patents. We held that the Delaware District Court, having first obtained jurisdiction of the entire controversy, should proceed to adjudicate the rights of Triangle and National.

Again it will be observed that there are substantial differences between the facts of the Triangle case and those of the case at bar. In the Triangle case the Delaware litigation for a declaratory judgment was the *first* action and embraced all the patents which were or became the subject matter of any suit. The two principal antagonists were in the Delaware theatre when the declaratory judgment suit was filed. Only the retailer, Sears, was outside the Delaware arena. Obviously, National's attempt to transfer the struggle to Michigan for no other purpose than to enable National to compel Sears to take part in it could not meet with success. In the instant case the suit brought by C-O-Two against Acme in Illinois long antedated the declaratory judgment suit in Delaware brought by Kerotest, D.C., 92 F.Supp. 943. The Chicago suit appears to have been brought in good faith and every patent involved in the Delaware litigation was before the Chicago court. Kerotest could have entered the Chicago litigation had it seen fit to do so. Indeed C-O-Two subsequently compelled its entry. Kerotest, while displaying an apparent reluctance to enter the Illinois arena, did not harbor such an attitude toward the Delaware forum. In Triangle the declaratory judgment suit came first.

In the instant case the whole of the war and all the parties to it are in the Chicago theatre and there only can it be fought to a finish as the litigations are now cast. On the other hand if the battle is waged in the Delaware arena there is a strong probability that the Chicago suit nonetheless would have to be proceeded with for Acme is not and cannot be made a party to the Delaware litigation. The Chicago suit when adjudicated will bind all the parties in both cases. Why, under the circumstances, should there be two litigations where one will suffice? We can find no adequate reason. We assume, of course, that there will be prompt action in the Chicago theatre.

Neither Crosley nor Westinghouse nor Triangle was intended to lay down a rule of thumb. The rule as we conceived it was designed as an aid to the parties and to effect the ends of justice. As was said in Hammett v. Warner Brothers Pictures, 2 Cir., 176 F.2d 145, 150, it "has been recognized that this rule is not to be applied in a mechanical way regardless of other considerations." As we pointed out in the Westinghouse case the real question is not whether "another suit" has been

"previously" or "subsequently" begun between the parties but whether the relief sought can be "more expeditiously and effectively afforded [in the other suit] than in the declaratory proceeding." [130 F.2d 475.] We adhere to that view. We think that relief can be more expeditiously afforded in the Chicago proceeding than in the Delaware declaratory judgment suit. Compare Hammett v. Warner Brothers Pictures, 2 Cir., 176 F.2d 145, 148–151, a copyright case which is closer perhaps on its facts to the case at bar than any other reported decision. Therein the Court of Appeals for the Second Circuit, citing the Crosley case, decided the issue as we do here. Cf. Cresta Blanca Wine Co., Inc. v. Eastern Wine Corporation, 2 Cir., 143 F. 2d 1012, and Speed Products Co. v. Tinnerman Products, 83 U.S.App.D.C. 243, 171 F.2d 727.

The order of the court below will be reversed and the cause remanded with the direction to enter an order staying further proceedings in this action until ten days after the final determination of the Chicago suit. If, however, the prosecution of the Chicago suit be unreasonably delayed, this court will entertain an application for a modification of the order.

MARIS, Circuit Judge, dissenting.

I am unable to agree that Judge Rodney was guilty of an abuse of discretion in this case. On the contrary I think that he soundly exercised the discretion confided in him by the rule which this court, sitting in banc, laid down in Triangle Conduit & Cable Co. v. National Elec. P. Corp., 3 Cir., 1942, 125 F.2d 1008, certiorari denied 316 U.S. 676, 62 S.Ct. 1046, 86 L.Ed. 1750. It is true that the majority do not say that Judge Rodney abused his discretion. Instead they ignore his careful weighing of the factors involved,[1] intimate that he merely applied a "rule of thumb," and themselves proceed to determine the matter as though they were the district court. Moreover while refusing to apply the rule of the Triangle case the majority do not expressly overrule that case but rather seek to distinguish it on its facts from the present case. I concede that there is a factual distinction in that in the Triangle case the infringement suit by National against Triangle and its customer, Sears, Roebuck & Company, was begun after the declaratory judgment suit had been brought by Triangle against National, whereas here the infringement suit by C-O-Two against Kerotest's customer, Acme Equipment Company, Inc., was begun before the declaratory judgment suit against C-O-Two was instituted by Kerotest.

In my opinion, however, the distinction made by the majority is without legal significance. To my mind the significant point is that Kerotest itself was not made a defendant in the infringement suit until after it had brought the declaratory judgment suit. In this respect the case is identical with the Triangle case. The two cases are also identical in that the litigation between the parties to the declaratory judgment suit was first begun by the institution of that suit while, if the controversies between the

---

1. In his opinion, D.C., 92 F.Supp. 943, 947, Judge Rodney said:

    "The question nevertheless arises as to whether this is one of those exceptional cases in which the taking of jurisdiction should be declined in favor of the later suit on the ground that the questions in controversy between the parties can be better settled and the relief sought be more expeditiously and effectively afforded in the Chicago action. The parties with which we are solely concerned are Kerotest and C-O-Two. Nothing is apparent to indicate that the Chicago action will settle the controversy between these parties better or more effectively. A date for the trial of the Chicago action is said to have been set for September, 1950, and this may give some apparent basis for the contention that the litigation there will be concluded more expeditiously. Whether the matter can be heard at that time must be problematical. There is nothing to indicate that with the full cooperation of the defendant, who allegedly is seeking an early trial, the trial in this jurisdiction may not be had expeditiously and some slight delay would seem too slim a basis for departure from recognized principles."

patent owner, the infringing manufacturer and its customer were to be litigated in a single lawsuit, it could only be done in the infringement suit. In the Triangle case we held nonetheless that the declaratory judgment suit, in which the rights of the patent owner against the infringing customer could not be litigated, must take precedence over the infringement suit so far as the litigation between the patent owner and the infringing manufacturer was concerned.

The rule which this court laid down in the Triangle case, as well as in Crosley Corporation v. Hazeltine Corporation, 3 Cir., 1941, 122 F.2d 925, certiorari denied 315 U.S. 813, 62 S.Ct. 798, 86 L.Ed. 1211, and Crosley Corporation v. Westinghouse Elec. & Mfg. Co., 3 Cir., 1942, 130 F.2d 474, certiorari denied 317 U.S. 681, 63 S.Ct. 202, 87 L.Ed. 546, has had acceptance in at least five other circuits.[2] I think it is particularly significant that in the Second Circuit in the case of Cresta Blanca Wine Co. v. Eastern Wine Corporation, 1944, 143 F.2d 1012, and in the District of Columbia Circuit in the case of Speed Products Co. v. Tinnerman Products, 1948, 83 U.S.App. D.C. 243, 171 F.2d 727, the rule of the Triangle case has been applied to facts indistinguishable in principle from those in the case now before us. The majority ask us to compare those cases with their decision here and I join in that request. For when such a comparison is made it will become plain that this court is today rejecting an application of the rule of the Triangle case which two other courts have heretofore made in reliance upon that decision by us.

In the Cresta Blanca Wine case Cresta had sued Eastern in the Southern District of New York for a declaratory judgment of noninfringement of a trade-mark. Thereafter Eastern sued Schenley and Cresta in the District of Delaware for infringement of the same mark. Schenley then applied for leave to intervene as a plaintiff in the suit in the Southern District of New York and both Cresta and Schenley asked that court to stay further proceedings in Delaware. The district court denied the intervention and the stay. The Court of Appeals reversed as to Cresta holding that the suit by Eastern in Delaware should be stayed as against Cresta since the suit in New York was prior as to those two parties. As to Schenley, however, the Court of Appeals affirmed, saying, 143 F.2d at page 1014:

"It can hardly be said that intervention, had it been granted, would have related back to the filing of Cresta's complaint. Therefore Schenley's proposed intervention against Eastern would have been the later action between them and the very principle Schenley invokes would require staying the New York action rather than the Delaware suit."

In the Speed Products case, the significant facts were these: Speed had brought suit against the Commissioner of Patents in the District of Columbia for the registration of a trade-mark. Shortly thereafter Speed sued Tinnerman in the Southern District of New York, seeking registration of the same mark and a declaratory judgment of noninfringement of Tinnerman's trademarks. Later Tinnerman was granted permission to intervene in the suit in the District of Columbia and it filed an answer and counterclaim for infringement of its trademarks. Thereafter Speed moved in the District of Columbia for an order suspending the suit there until the case in the Southern District of New York had been tried and Tinnerman moved for an order enjoining Speed from proceeding with the New York action until the suit in the District of Columbia had been tried. The District Court for the District of Columbia denied Speed's motion and granted that of

2. Dwinell-Wright Co. v. National Fruit Product Co., 1 Cir., 1942, 129 F.2d 848, 852, 853; Carbide & Carbon C. Corp. v. United States I. Chemicals, 4 Cir., 1944, 140 F.2d 47, 49; Cresta Blanca Wine Co. v. Eastern Wine Corporation, 2 Cir., 1944, 143 F.2d 1012, 1014; Speed Products Co. v. Tinnerman Products, 1948, 83 U.S.App.D.C. 243, 171 F.2d 727, 729; Chicago Pneumatic Tool Co. v. Hughes Tool Co., 10 Cir., 1950, 180 F.2d 97, 101, certiorari denied 340 U.S. 816, 71 S.Ct. 46.

Tinnerman but this action was reversed by the Court of Appeals for the District of Columbia, the court saying, 171 F.2d at page 729:

"The second question is whether or not the District of Columbia court had power to enjoin Speed Products from proceeding with the New York action. The law on this question is well settled. Where two cases between the same parties on the same cause of action are commenced in two different Federal courts, the one which is commenced first is to be allowed to proceed to its conclusion first, and an injunction to accomplish this is proper. This is recognized by three cases: Triangle Conduit & Cable Co. v. National Elec. P. Corp., 3 Cir., 1942, 125 F.2d 1008, certiorari denied 1942, 316 U.S. 676, 62 S.Ct. 1046, 86 L.Ed. 1750; Crosley Corporation v. Hazeltine Corporation, 3 Cir., 1941, 122 F.2d 925; Cresta Blanca Wine Co. v. Eastern Wine Corporation, 2 Cir., 1944, 143 F.2d 1012."

The majority place much reliance on a later case in the Second Circuit, Hammett v. Warner Brothers Pictures, 1949, 176 F.2d 145, 148. In that case, however, the district court after weighing all the factors decided in the exercise of its discretion that the declaratory suit should be dismissed. The Court of Appeals in affirming took occasion to point out that the question "was addressed to the sound discretion of the district court." The court found no abuse of that discretion and rested its affirmance as well on the fact that disposition of the action for which priority was sought "would settle only a part of the controversy between the parties to it." Under these circumstances it was clearly within the discretion of the district court not to apply the rule of the Triangle case. In the present case, however, C-O-Two's entire cause of action against Kerotest may be heard and determined in the declaratory judgment proceeding presently pending in the District of Delaware. I cannot join in a judgment which holds by necessary inference that Judge Rodney abused his discretion in applying the rule of the Triangle case to this situation.

Judge KALODNER joins in this dissent.